UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MISHELLE J. KUEMPEL, | ) |
| | ) No. CV-05-0113-MWL |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on January 9, 2006. (Ct. Rec. 11, 14).  Plaintiff Mishelle Kuempel ("Plaintiff") filed a reply brief on December 23, 2005.  (Ct. Rec. 18).  Attorney Donald Charles Bell represents Plaintiff; Special Assistant United States Attorney Jeffrey H. Baird represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 4).  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 11), **DENIES** Defendant's Motion for Summary Judgment (Ct. Rec. 14), and **REMANDS** the case for further proceedings.

**JURISDICTION**

On April 26, 2002, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since September 19, 2001, due to back, neck, shoulder and knee pain and bilateral carpal tunnel syndrome. (Administrative Record ("AR") 190-192, 202). The application was denied initially and on reconsideration.

On February 25, 2004, Plaintiff first appeared before Administrative Law Judge R. J. Payne ("ALJ"). (AR 41-68). The testimony of medical expert Dr. Glen A. Almquist was taken via telephone on that occasion. (AR 44-65). A supplemental hearing was held on May 11, 2004, before the ALJ, at which time testimony was taken via telephone soley from Plaintiff. (AR 69-102). A second supplemental hearing was held on June 23, 2004, at which time testimony was taken from medical expert Dr. Glen A. Almquist and vocational expert Thomas L. Moreland. (AR 103-137).

On September 9, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 24-36). The Appeals Council denied a request for review on April 2, 2005. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 19, 2005. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and Plaintiff's brief and will only be summarized here. Plaintiff was 41 years old on the date

of the ALJ's decision. (AR 25). She completed the ninth grade in school and she has past relevant work as an aircraft mechanic at Boeing. (AR 79, 90-91, 202-203, 208). She indicated that she stopped working because Boeing could no longer find her work that did not cause her pain. (AR 202).

At the supplemental administrative hearing held on May 11, 2004, Plaintiff testified that she was alleging an onset of disability date of September 19, 2001, the date she had her first carpal tunnel surgery. (AR 77). She indicated she was medically laid off of Boeing on March 26, 2002. (AR 77-78).

Plaintiff testified that the pain in her hands is the number one thing that prevents her from working. (AR 82). She stated that she had two surgeries for carpal tunnel in 2001, one on each hand. (AR 82-83). She also had a trigger finger release on the right hand in October of 2003. (AR 83). She indicated that she had relief following the surgeries, but that she continues to have a lack of full grip and the pain has continuously gotten worse over time. (AR 83). Plaintiff testified that she has problems grasping items, like soap in the shower and picking up cups, and must therefore use two hands. (AR 100).

She indicated that she also has problems with pain in her knees, shoulders, back and arms, but had not seen a doctor for these ailments since October of 2002. (AR 84-85). She described the pain in these areas as constant and worsening with activity. (AR 85). Plaintiff testified that she had taken prescription ibuprofen, as needed, but has not renewed her prescription since it expired in April 2002. (AR 85-89). To relieve her pain, she indicated that she would use heat and ice packs and relax or rest.

(AR 89).  She testified that usually she has to rest 10 to 15
minutes every couple of hours.  (AR 99).

Plaintiff stated that she could probably walk about five to
10 minutes, stand for 10 to 15 minutes and sit for 15 to 20
minutes before it starts to bother her.  (AR 87).  She indicated
that she could lift five to 10 pounds without it being a
significant problem for her.  (AR 88).  She stated that she is
able to do her own grooming, bathing and dressing, although she
has difficulty tying her shoes and, when her shoulders are sore,
she needs her husband's assistance with fastening her bra.  (AR
97-98).

Plaintiff testified that she wakes up around 6:00 a.m. and
goes to bed around 10:00 p.m. getting only about three or four
hours of sleep per night.  (AR 91-92, 99).  With regard to daily
activities, she stated that she does housework and cooks when she
can, with her husband's assistance, and walks the dog a couple of
times a day for about five minutes at a time.  (AR 92).  She
indicated that she watches a little television and used to enjoy
doing yard work and riding four-wheelers, but is not able to
partake in those hobbies as often due to her pain.  (AR 92-93).
She stated that she goes grocery shopping with her husband once a
week for five to 10 minutes.  (AR 93).  She testified that the
longest trip she has taken since September of 2001 is a drive to
Arizona in March of 2004.  (AR 80-81).  However, Plaintiff
indicated that her share of the driving on that trip consisted of
only about 15 minutes total for the whole trip.  (AR 98).
///
///

Medical expert Glen A. Almquist, M.D., testified by telephone at the administrative hearing held on February 25, 2004, and in person at the hearing held on June 23, 2004, and vocational expert Tom Moreland testified in person at the administrative hearing held on June 23, 2004.  (AR 44-66, 107-135).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines ///

whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

*Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the Court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the Court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since the alleged onset date,
September 19, 2001.  (AR 26).  At step two, the ALJ found that
Plaintiff has the severe impairments of bilateral carpal tunnel
syndrome, post surgery, and right trigger finger, post release,
but that she does not have an impairment or combination of
impairments listed in or medically equal to one of the Listings

impairments.  (AR 30).  The ALJ specifically indicated that
Plaintiff's complaints of back, neck, shoulder and knee pain were
not severe impairments since they have not resulted in significant
limitations.  (AR 30).

The ALJ concluded that Plaintiff has the RFC to perform a
wide range of light exertion work.  (AR 32).  The ALJ found that
Plaintiff could occasionally lift or carry 20 pounds, frequently
lift or carry 10 pounds, stand two hours at a time for a total of
six hours in an eight-hour workday, walk two hours at a time for a
total of six hours in an eight-hour workday, sit two hours at a
time (with normal breaks) for a total of about six hours in an
eight-hour workday, perform no heavy prolonged gripping (no more
than ten to twenty pounds) and only occasionally use heavy
vibrating equipment.  (AR 32).

At step four of the sequential evaluation process, the ALJ
found that Plaintiff lacks the RFC to perform the exertional
requirements of her past relevant work as an assembler of aircraft
structures.  (AR 33).  However, the ALJ determined that, within
the framework of the Medical-Vocational Guidelines ("Grids") and
based on the vocational expert's testimony and Plaintiff's RFC,
age, education, and work experience, there were a significant
number of jobs in the national economy which she could perform
despite her limitations.  (AR 33-35).  Examples of such jobs
included work as a boat rental clerk, an usher, a photo shop
counter clerk, a cashier II, a laundry worker, a microfilm
production assistant, a storage facility rental clerk, and a
surveillance system monitor.  (AR 34).  The ALJ noted that the
vocational expert testified that even if an additional limitation

such as no repetitive, continuous use of the bilateral hands for fine and gross manipulation activities were added to the RFC, the individual could still do all of the jobs listed.  (AR 34-35). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 35-36).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.    The ALJ improperly relied on the testimony of the medical expert, Glen Almquist, M.D.;

2.    The ALJ erred by giving more weight to the opinion of Dr. Almquist, a nonexamining physician, than to independent medical examiner Dr. David Green;

3.    The ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported;

4.    The ALJ failed to consider the testimony of lay witnesses; and

5.    The ALJ erred by relying on vocational expert testimony which was based on a hypothetical that did not include all of Plaintiff's physical limitations.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

///

**DISCUSSION**

**A.  Credibility**

   **1.    Plaintiff**

Plaintiff argues that the ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported. (Ct. Rec. 11-2, pp. 15-18).  The Commissioner responds that the ALJ appropriately gave clear and convincing reasons to discredit Plaintiff.  (Ct. Rec. 15, pp. 8-10).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  There is no affirmative evidence of malingering in this case; therefore, the ALJ was required to give "clear and convincing" reasons for rejecting Plaintiff's testimony.  *Lester*, 81 F.3d at 834.

The ALJ determined that Plaintiff was not credible and that her statements concerning her pain, symptoms and limitations were thus not persuasive.  (AR 31-32).  In support of this finding, the ALJ indicated as follows: (1) the record reflects that Plaintiff is not taking any prescribed medication for her pain, yet

describes her pain as a seven out of ten on average and spiking every hour for up to five minutes at a time to a level nine or ten; (2) although Plaintiff testified at the supplemental hearing to significant limitations regarding sitting, standing and walking, she earlier reported she could lift 10 to 20 pounds occasionally, reach frequently and occasionally perform handling and fingering; (3) the only time Plaintiff was given limitations was for a very short period from February 2002 through March 2002 by Dr. Schaff, related to her knee pain; and (4) no treating or examining physician has opined that she is totally unable to perform some type of employment.

While it is true that Plaintiff indicated that she did not take prescribed medication for her pain, she testified that she takes ibuprofen, uses heat and ice pack and takes periodic rests for her pain. (AR 85, 89, 99). Despite the fact that she takes no prescription medications, there is no evidence in the record that Plaintiff failed to seek treatment or otherwise follow a prescribed course of treatment.

With regard to the ALJ's notation as to the Plaintiff's statements regarding her limitations, the differences between the May 12, 2002 Daily Activity Questionnaire and Plaintiff's testimony on May 11, 2004 (two years later) were minor and could be explained by a possible worsening of her condition over time.

Finally, the ALJ's comments that the only physician to assess limitations was Dr. Schaff and that no treating or examining physician has opined that Plaintiff is unable to work is not supported by the record. As noted by Plaintiff (Ct. Rec. 18, p. 5), on January 6, 2004, Plaintiff's treating physician, James W.

Lamberton, D.O., indicated that Plaintiff could not return to full work duty, without restrictions (AR 331), independent medical examiner, David Green, M.D., opined on April 26, 2004, that it was premature to determine whether Plaintiff could go back to work with appropriate restrictions and limitations and that Plaintiff's condition was not fixed and stable (AR 351-352), and Dr. Lamberton stated on June 15, 2004, that any vocational rehabilitation plans needed to be placed on hold until she recovered from a planned July 16, 2004, repeat right carpal release (AR 358). Moreover, even the ALJ concluded that the record evidence supported a finding that Plaintiff could not return to her past relevant work because she was not able to perform medium exertion work. (AR 33). The ALJ specifically found that Plaintiff was restricted to the performance of light exertion work with further limitations on her ability to stand, walk and sit as well as restriction on the use of her hands. (AR 32).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). However, after reviewing the record, the undersigned judicial officer finds that the ALJ failed to provide "clear and convincing" reasons for ///

finding Plaintiff not credible.  Accordingly, Plaintiff's
testimony was not rejected on permissible grounds.

**2.  Lay Witnesses**

Plaintiff also contends that the ALJ erred by not making
proper credibility findings as to the testimony of lay witnesses
James Kuempel, Plaintiff's husband (AR 236-238), and Terry
Lennier, Plaintiff's step-daughter (AR 214-215).  (Ct. Rec. 11-2,
pp. 18-19).  The ALJ may not ignore or improperly reject the
probative testimony of a lay witness without giving reasons that
are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919
(9th Cir. 1993).  The ALJ shall "consider observations by non-
medical sources as to how an impairment affects a claimant's
ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.
1987), *citing* 20 C.F.R. § 404.1513(e)(2).

The ALJ made note of the written statement of Ms. Lennier and
the declaration of Mr. Kuempel; however, the ALJ indicated that
while the statements were considered, "the close relationship
between the claimant and these individuals and the possibility
that their statements were influenced by their desire to help the
claimant cannot be entirely ignored in deciding how much weight to
accord the statements."  (AR 32).  The Commissioner argues that
the ALJ was "entitled to pass over them without statement," and
that "[a]dvocacy discredits testimony."  (Ct. Rec. 15, pp. 9-10).

However, "the fact that a lay witness is a family member
cannot be a ground for rejecting his or her testimony."
*Regennitter v. Commissioner*, 166 F.3d 1294, 1298 (9th Cir. 1999)
(citations omitted).  Although the ALJ provided a specific reason
to reject the lay witness testimony (close relationship), the

rationale was not legitimate according to Ninth Circuit case law. Accordingly, the ALJ also erred with regard to his rejection of the lay witnesses' testimony.

**B.  Reliance on Medical Expert**

Plaintiff contends that the ALJ erred by relying on the opinions of a nonexamining medical advisor, Glen Almquist, M.D., and that the ALJ erred by not according more weight to the independent medical exam of Dr. Green. (Ct. Rec. 11-2, pp. 14-15).  However, it is not entirely clear from Plaintiff's opening and reply briefs what specific testimony of Dr. Almquist the Plaintiff believes was given inappropriate weight by the ALJ over the testimony of Dr. Green.  (Ct. Rec. 11, 18).  The Commissioner responds that the ALJ reasonably relied upon the findings of Dr. Almquist to find that Plaintiff did not meet or equal any Listings and to set reasonable functional limitations.  (Ct. Rec. 15, pp. 5-8).

The ALJ apparently discounted Dr. Green's opinion because restrictions on the repetitive use of her upper extremities was temporary and needed to be reevaluated after treatment.  (AR 28). A review of the record suggests the presence of major difficulties which, if fully explored, may justify a finding of disability for purposes of federal law.  As evidenced by Plaintiff, she has had four recent surgeries on her hands:  a carpal tunnel release - left hand on September 20, 2001, right carpal tunnel release on November 8, 2001, surgery for release of her right ring finger on October 28, 2003, and a repeat right carpal tunnel release on July 27, 2004.  (Ct. Rec. 18, p. 3).  Although it appears that Plaintiff does in fact have significant problems, the Court has a

limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  While the Commissioner makes a good case for the ALJ's reliance on Dr. Almquist's findings (Ct. Rec. 15), the undersigned finds that further review of the entire record, and in particular Dr. Green's independent medical exam, would ensure that Plaintiff's claim is fully addressed.  Therefore, the undersigned concludes that this case warrants a remand for additional proceedings.  Plaintiff's limitations and functioning must be reevaluated, on remand, taking into consideration the opinions of Dr. Green, as well as all record evidence.  Plaintiff's new RFC assessment shall then be presented to a vocational expert, at a new hearing, in order to determine if she is capable of performing work existing in sufficient numbers in the national economy.

## CONCLUSION

Plaintiff argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits.  (Ct. Rec. 11).  The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id.* Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, further development is necessary to remedy defects and for a proper determination to be made.

On remand, the ALJ shall reevaluate and accord the appropriate weight to the statements made by Plaintiff, Mr. Kuempel and Ms. Lennier, and consider any other evidence or testimony relevant to Plaintiff's disability claim.  The ALJ shall reassess Plaintiff's RFC, taking into consideration the opinions of Dr. Green, as well as any additional or supplemental medical evidence relevant to Plaintiff's claim for disability benefits. The ALJ shall elicit the testimony of a medical expert at the new administrative hearing to assist the ALJ in making the RFC determination.  Plaintiff's new RFC assessment should be presented to a vocational expert, at the new hearing, in order to determine if she is capable of performing work existing in sufficient numbers in the national economy.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 11**) is **GRANTED in part** and the above captioned matter is **REMANDED** for additional proceedings as outlined above and pursuant to sentence four of 42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED**.

3.   Judgment shall be entered for **PLAINTIFF**.  An application for attorney fees may be filed by separate motion.

4.   The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

**DATED** this   17th   day of February, 2006.

                s/Michael W. Leavitt
                MICHAEL W. LEAVITT
                UNITED STATES MAGISTRATE JUDGE